# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re: ) <br> ) <br> Unit Petroleum Company ) <br> ) <br> Reorganized Debtor.[1] ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Chapter 11 <br><br> Case No. 20-32738 |

## UNIT CORPORATION'S MOTION FOR AN
## ORDER ENFORCING THE CONFIRMATION ORDER

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

Unit Corporation, the Reorganized Debtor (the "Reorganized Debtor"), by its undersigned counsel, hereby moves (this "Motion") this Court for entry of an Order enforcing this Court's Confirmation Order (defined below). Specifically, Unit Corporation seeks an Order that requires

---

[1] Unit Corporation is one of the Reorganized Debtors in the chapter 11 cases that were previously jointly administered under Case No. 20-32740. Pursuant to the Final Decree in that case, Unit Corporation's case is now being jointly administered under this case and under Case No. 20-32738.

1

David M. Poarch, R. Brett Kramer, and PJ OIL LLC (collectively, the "Oklahoma Plaintiffs")[2] to immediately dismiss the Oklahoma Litigation (defined below) because the claims asserted therein are barred by releases granted by the Oklahoma Plaintiffs pursuant to the Confirmation Order, and an injunction enjoining the Oklahoma Plaintiffs from bringing any action subject to those releases. In support of this Motion, the Liquidating Trustee respectfully states as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought in this Motion are Sections 105(a), 1141(a) and 1142(b) of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 3020(d) and 9020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. The Chapter 11 Cases and the Plan Releases

4. On May 22, 2020 (the "Petition Date"), Unit Corporation and five related businesses filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[3] On June 9, 2020, Unit Corporation and its related debtors filed the *Debtor's Proposed Joint Chapter 11 Plan of*

---

[2] Although the Oklahoma Plaintiffs have never made an appearance in these Chapter 11 Cases, the Reorganized Debtor is serving the Oklahoma Plaintiffs with a courtesy copy of this Motion. Further, the Motion will be an exhibit to the motion to dismiss to be filed in the Oklahoma Litigation (defined below), which motion the Reorganized Debtor will serve on the Oklahoma Plaintiffs contemporaneously with the service of this Motion.

[3] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers were: 8200 Unit Drive, L.L.C. (1376); Unit Corporation (3193); Unit Drilling Colombia, L.L.C. (1087); Unit Drilling Company (5145); Unit Drilling USA Colombia, L.L.C. (0882); and Unit Petroleum Company (5963).

2

*Reorganization* (Doc. No. 129) and shortly thereafter, on June 19, 2020, filed the *Debtors' First Revised Proposed Joint Chapter 11 Plan of Reorganization* (the "First Revised Plan").

5.     The First Revised Plan included broad provisions for post-Effective Date (defined below) releases and injunctions (collectively, the "Releases") by the Debtor for the benefit of third parties, and also by third parties for the benefit of the Debtor. Among other things, the Releases in the First Revised Plan included the following in bolded font, where the "Releasing Parties" released Unit Corporation from:[4]

> …any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever… based on or relating to, or in any manner arising from, in whole or in part… the purchase, sale, or rescission of the purchase or sale of any Security of [Unit Corporation], the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan… or any Restructuring, contract, instrument, document, release, or other agreement or document… created or entered into in connection with the… the Plan, the Plan Supplement… the related agreements, instruments, and other documents… the Chapter 11 Cases… the pursuit of Confirmation… the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan… or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

6.     In conjunction with the Releases granted by the Releasing Parties in the First Revised Plan, the First Revised Plan also provided for Injunctions enjoining any Releasing Party from, among other things, "…commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or

---

[4] The Plan's definition of Releasing Parties includes: "(c) all Holders of Claims and Interests who vote to accept the Plan; (d) each Holder of a Claim or Interest whose vote to accept or reject the Plan is solicited but who does not vote either to accept or reject the Plan; (e) each Holder of a Claim or Interest who votes, or is deemed, to reject the Plan and who does not elect the Release Opt-Out on its Ballot or Release Opt-Out Form, as applicable; and (f) the Holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out." In the First Amended Complaint in the Oklahoma Litigation, the Oklahoma Plaintiffs acknowledge that they are Releasing Parties. *See* Exhibit A at ¶ 39.

3

Interests…"

7. The First Revised Plan also provided a mechanism defined in that document as the "Warrant Package" whereby certain parties that did not opt-out of the Releases would receive a pro rata share of certain out-of-the-money warrants to purchase common stock in the reorganized debtor, post-Effective Date. The First Revised Plan stated that the Warrant Package would be governed by a "Warrant Agreement" that would be filed later in a Plan Supplement (defined below).

8. The First Revised Plan contained a minimum distributions provisions stating that:

> No fractional shares of Reorganized Unit Corp. Interests shall be distributed, and no Cash shall be distributed in lieu of such fractional shares. When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of Reorganized Unit Corp. Interests that is not a whole number, the actual distribution of shares of Reorganized Unit Corp. Interests shall be rounded as follows: (a) fractions of one-half or greater shall be rounded to the next higher whole number, and (b) fractions of less than one-half shall be rounded to the next lower whole number with no further payment therefor. The total number of authorized shares of Reorganized Unit Corp. Interests to be distributed pursuant to the Plan shall be adjusted as necessary to account for the foregoing rounding.

In the Confirmed Plan (defined below). the minimum distributions provision was amended to clarify that "No fractional shares of Reorganized Unit Corp. Interests shall be distributed (including in respect of the Warrant Package)."

9. On July 22, 2020, Unit Corporation and its related debtors filed the *Notice of Filing Supplement to the Debtors' First Revised Proposed Joint Chapter 11 Plan* (Doc. No. 249, the "Plan Supplement"). The Plan Supplement included, as Exhibit I to that document, the form of the Warrant Agreement. The cover page to the Warrant Agreement reads verbatim:

**EXHIBIT I**
**Form of Warrant Agreement**
This Exhibit I is not final and remains subject to (a) continuing negotiations among the Debtors and interested parties with respect thereto and (b) the consents set forth in the Plan and Restructuring Support Agreement. The Debtors reserve all rights to alter, amend, modify, or supplement the Plan Supplement, and any of the

4

      documents and designations contained herein, at any time before the Effective Date, or any such other date as may be provided for by the Plan or by Order of the Court.

The Warrant Agreement itself is also clearly marked "DRAFT" in the top-right corner of the first page.

      10.    On August 3, 2020, the Debtors filed the *Amended Joint Chapter 11 Plan of Reorganization* (Doc. No. 320, the "Confirmed Plan"), which had primarily superficial changes from the First Revised Plan, including the clarification as to minimum distributions noted above. This clarification was the only change between the First Revised Plan and the Confirmed Plan in any way relating to the warrants or the Warrant Agreement. On August 6, 2020, The Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Debtors' Amended Joint Chapter 11 Plan of Reorganization* (Doc. No. 340, the "Confirmation Order"), which confirmed the Confirmed Plan by adopting a proposed order previously submitted by the Debtors.

      11.    The Confirmation Order is consistent with Unit Corporation's reserved right to modify the Warrant Package through the Effective Date. The Confirmation Order provides "the Debtors reserve the right to and may alter, amend, update, or modify the Plan Supplement before the Effective Date, provided that any such alteration, amendment, update, or modification shall be in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the terms of this Confirmation Order." The Confirmation Order also contains specific and detailed findings that the Releases: "are fully consensual because all parties in interest, including all Releasing Parties, were provided with extensive and sufficient notice of the Chapter 11 Cases, the Plan, the deadline to object to confirmation of the Plan, and the process for opting-out of giving the Third-Party Releases, and all such parties were properly informed that the Plan contained release provisions that could affect such parties' rights." There are five lengthy and detailed paragraphs in the Confirmation Order

regarding the propriety, sufficiency, and enforceability of the Releases.

12. The Confirmed Plan became effective on September 3, 2020 (the "Effective Date") and the Debtors filed the *Notice of (I) Entry of Order Approving the Debtors' Disclosure Statement on a Final Basis and Confirming the Debtors' Amended Joint Chapter 11 Plan of Reorganization, (II) Occurrence of the Effective Date, and (III) Administrative Expense Claims Bar Date* (Doc. No. 387).

### B. The Oklahoma Lawsuit

13. On September 11, 2023, the OK Plaintiffs filed the case *Poarch et al v. Unit Corporation*, Case No. 23-cv-00789-PRW in the United States District Court for the Western District of Oklahoma (the "Oklahoma Litigation"). The *First Amended Class Action Complaint* filed by the Oklahoma Plaintiffs in the Oklahoma Litigation is attached as Exhibit A.

14. In the Oklahoma Litigation, the Oklahoma Plaintiffs seek class status and allege that Unit Corporation has breached the Confirmed Plan and Confirmation Order. The Oklahoma Plaintiffs assert that prior to the Petition Date, they were stockholders in Unit Corporation, and that Unit Corporation's prepetition stock was cancelled pursuant to the terms of the Confirmed Plan. Plaintiffs further allege that, under the Confirmed Plan, they were entitled to purchase new stock in the reorganized Unit Corporation in accordance with the Warrant Package approved by and through the Plan Confirmation Order. According to the Oklahoma Plaintiffs, post-confirmation but pre-Effective Date, Unit Corporation modified the Warrant Agreement in a manner that requires Bankruptcy Court approval. Plaintiffs allege that because Unit Corporation did not obtain Bankruptcy Court approval, the new shares must be governed by the terms of the Warrant Agreement strictly as it appeared in the Plan Supplement, despite the leading disclaimer that it was "not final" and that Unit Corporation "…reserves all rights to alter, amend, modify, or supplement

the Plan Supplement, and any of the documents and designation contained herein, at any time before the Effective Date…".

15. Importantly, the Oklahoma Plaintiffs concede in the Oklahoma Litigation that they did not opt-out of the Releases contained in the Confirmed Plan and ordered by the Confirmation Order. Just as importantly, the modification of the Warrant Agreement that the Oklahoma Plaintiffs allege was improper occurred on or prior to the Effective Date, on September 3, 2020, bringing the modification squarely within the timeframe contemplated in the Releases.

16. None of the Oklahoma Plaintiffs objected to any iteration of the Debtors' chapter 11 plan, much less raised any issue with the Releases. Indeed, the Oklahoma Plaintiffs never appeared in the Chapter 11 Cases.[5] Notably, there were a few objections to the scope of the Releases by other parties-in-interest, yet despite those objections, the language in the Confirmed Plan was preserved and the Confirmation Order was entered with the Releases intact. There were no objections by any party to the Debtors' ability to modify the Plan Supplement up to and including the Effective Date.

17. Contemporaneously with the filing of this Motion to Enforce, Unit Corporation is also filing a *Motion to Dismiss Under Fed. R. Civ. P. 12(b)(3) and 12(b)(6) and 28 U.S.C. § 1406* in the Oklahoma Litigation.[6] In that motion, Unit Corporation contends that, due to the Releases, the Oklahoma Plaintiffs are barred from bringing the claims they assert in the Oklahoma Litigation anywhere, and to the extent that there is any dispute whatsoever for a court to hear, this Court has exclusive jurisdiction under the Bankruptcy Code, common law, and the terms of the Confirmed

---

[5] As Holders of Interests, the Oklahoma Plaintiffs had no right to vote on the Confirmed Plan. The only position they had the right to take in the cases was to elect the Release Opt-Out. None of the Oklahoma Plaintiffs made that election.

[6] The Motion to Dismiss from the Oklahoma Litigation is attached as <u>Exhibit B</u>.

7

Plan and the Confirmation Order.

## III. RELIEF REQUESTED

### A. The Court Should Enforce the Confirmation Order by Barring the Oklahoma Plaintiffs from Asserting their Allegations in the Western District of Oklahoma, or Anywhere

18. As stated above, the Oklahoma Plaintiffs are seeking to try claims alleging violations of an order of this Court, in another court. The Confirmed Plan should be enforced by this Court to bring an immediate end to the Oklahoma Litigation, but also to bring an end to litigation concerning the Oklahoma Plaintiffs' claims anywhere, as the Oklahoma Plaintiffs are enjoined from bringing those claims under the Releases.

19. Section 105(a) of the Bankruptcy Code provides as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

20. Section 1141(a) of the Bankruptcy Code provides that: "…the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan."

21. The Confirmed Plan and Confirmation Order provide for a confirmation injunction to enforce the Releases, as discussed above. The Releases unequivocally apply to the substance of the Oklahoma Plaintiffs' allegations, as the Releases cover any "contract, instrument, document, release, or other agreement or document [] created or entered into in connection with [] the Plan,

8

the Plan Supplement [] the related agreements, instruments, and other documents, [] the Chapter 11 Cases, [] the pursuit of Confirmation, [] the solicitation of votes with respect to the Plan, and the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan [] or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing."

*22.* From and after the Effective Date, the Confirmation Order enjoined all persons from taking action that does not comply with or is inconsistent with the provisions of the Plan, including the Releases. Bankruptcy courts have the authority to grant injunctive relief under section 105(a) of the Bankruptcy Code, and the power to issue orders enforcing injunctions. *See* 11 U.S.C. § 105(a); *See also In re Fauser,* 545 B.R. 907, 916 (Bankr. S.D. Tex. 2016) ("Bankruptcy courts have the power to coerce compliance with injunctive orders").

23. Courts have detailed the injunctive and enforcement powers as follows: "section 105 permits the court to issue both preliminary and permanent injunctions after confirmation of a plan to protect the debtor and the administration of the bankruptcy estate." *In re Am. Hardwoods, Inc.*, 885 F.2d 621, 625 (9th Cir. 1989)).

24. While the Oklahoma Plaintiffs filed the Oklahoma Litigation in the United States District Court for the Western District of Oklahoma, as set forth above, the Confirmed Plan and Confirmation Order expressly enjoins the Oklahoma Plaintiffs from commencing and continuing that specific litigation. This Court has the authority to require the Oklahoma Plaintiffs to dismiss the Oklahoma Litigation.

25. Specifically, "where a motion seeks to 'prevent the prosecution of causes of action expressly prohibited by the confirmation order,' it would be 'difficult to identify judicial acts that

9

are more critical to the bankruptcy process or more closely tethered to core bankruptcy jurisdiction.'" *In re Residential Cap., LLC*, 512 B.R. 179, 188-89 (Bankr. S.D.N.Y. 2014) (internal citations omitted).

26. In *Residential Cap.*, the United States Bankruptcy Court for the Southern District of New York granted a motion to enforce the applicable plan injunction to require claimants who had previously had their claims expunged from continuing litigation in California that was expressly prohibited by the confirmation order. *Id.* The bankruptcy court in New York reasoned that the bankruptcy court retained core jurisdiction post-confirmation to interpret its own orders. *Id.*

27. This Court has the authority to enforce its own Confirmation Order, and can issue any subsequent orders necessary to actually carry out the Confirmation Order. Similarly, the Reorganized Debtor has the authority to request the relief sought herein in order to comply with the Confirmation Order.

**B. If There is a Valid Dispute Regarding the Plan Supplement, the Confirmed Plan, or the Confirmation Order, which Unit Corporation Does Not Concede, the Court Should Enforce the Confirmation Order by Exercising its Exclusive Jurisdiction Over Any Such Dispute, and Order Dismissal of the Oklahoma Litigation**

28. The Confirmation Order provides that "The Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising in or related to, the Chapter 11 Cases, including the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code." Article XII of the Confirmed Plan provides a litany of subject upon which this Court retained exclusive jurisdiction, and what follows is only a sample:

> Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:
>
> 4. ensure that distributions to Holders of Allowed Claims or Interests are accomplished pursuant to the provisions of the Plan;
>
> 9. enter and implement such orders as may be necessary or appropriate to execute,

implement, or consummate the provisions of the Plan and the Restructuring Support Agreement, and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Restructuring Support Agreement;

11. resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan or the Restructuring Support Agreement;

12. issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

16. determine any other matters that may arise in connection with or relate to the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement;

17. adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein, including any Restructuring Transactions[.]

Each of the foregoing jurisdictional reservations is implicated in the Oklahoma Litigation. This Court has retained exclusive jurisdiction to resolve exactly this type of dispute.

29. As is the case for all federal courts, bankruptcy courts are courts of limited jurisdiction. Post-confirmation, a bankruptcy court's jurisdiction is further circumscribed. "After a plan is confirmed, the bankruptcy court's jurisdiction is limited to matters pertaining to the implementation or execution of the plan" or in other words, "matters that impact compliance with or completion of the reorganization plan." *Highland Capital Mgmt., LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 589 (5th Cir.2008) (citing *Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir.2001), and *United States Brass Corp. v. Travelers Ins. Group, Inc. (In re United States Brass Corp.)*, 301 F.3d 296, 305 (5th Cir.2002)). The jurisdictional retention effected by the Confirmation Order and the Confirmed Plan is consistent with the jurisdictional retention recognized by the Fifth Circuit. The Oklahoma Plaintiffs allege that Unit Corporation has not executed the Confirmed Plan in compliance with the terms approved by this Court. But the Oklahoma Plaintiffs have brought a

suit in another court that is squarely within the limited and exclusive jurisdiction of this Court.

30. The Confirmation Order establishes the exclusive jurisdiction of this Court, consistent with the Bankruptcy Code and Fifth Circuit precedent. Plaintiffs did not appeal the Confirmation Order, and it has long been final and non-appealable, meaning that Plaintiffs have waived any right to challenge this Court's retention of exclusive jurisdiction to hear and decide the merits of the allegations they attempt to bring in the Oklahoma Litigation.[7]

## IV. CONCLUSION

As set forth above, Unit Corporation respectfully requests this Court enter an Order enforcing its own Confirmation Order, and compelling the Oklahoma Plaintiffs to dismiss the Oklahoma Litigation within seven (7) days of entry of the Order approving this Motion, and further, to enter an Order enjoining from the Oklahoma Plaintiffs from refiling those allegations anywhere, pursuant to the Releases in the Confirmed Plan and the Confirmation Order. Finally, Unit Corporation requests any other relief which the Court determines is just and appropriate under the circumstances.

---

[7] Unit Corporation believes that, in light of this Court's jurisdiction, the Oklahoma Plaintiffs should not have brought the Oklahoma Litigation in the first place and reserves its rights to seek further relief on this issue.

Respectfully submitted,

**FROST BROWN TODD LLP**

*/s/ Mark A. Platt*
T. Ray Guy, Esq.
Mark A. Platt, Esq.
2101 Cedar Springs Road, Suite 900
Dallas, TX 75201
Telephone:   (214) 580-5852
Facsimile:   (214) 545-3472
Email:   mplatt@fbtlaw.com

Kenneth R. Breitbeil
4400 Post Oak Parkway, Suite 2850
Houston, TX 77027
Telephone:   (713) 590-9330
Facsimile:   (713) 824-7003
Email:   kbreitbeil@fbtlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing all those registered to receive such service. Further, although the Oklahoma Plaintiffs have never made an appearance in these Chapter 11 Cases, the Reorganized Debtor is serving the Oklahoma Plaintiffs with a courtesy copy of this Motion via email, and the Motion will be an exhibit to the motion to dismiss to be filed in the Oklahoma Litigation (defined below), which motion the Reorganized Debtor will serve on the Oklahoma Plaintiffs contemporaneously with the service of this Motion.:

/s/ *Mark Platt*
Mark Platt

0155872.0780738   4885-6139-7399v7